UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-22866-CIV-MORENO/HUNT

XTEC, Inc.,

Plaintiff,

vs.

CARDSMART TECHNOLOGIES, INC.,
and DAVID FISHER,

Defendants.
_________________________________/

**ORDER ON MOTIONS TO EXCLUDE EXPERT OPINION TESTIMONY**

This cause is before this Court on (1) Defendants' Motion to Strike the Expert Report of Kevin Kennedy Associates (authored by Jan P. Eiras) and to Bar Plaintiff's Expert Testimony at Trial; (2) Plaintiff's Renewed Motion to exclude the testimony and reports of Defendants' expert witnesses, Don Waldhalm and John Jorgensen; and (3) Plaintiff's Renewed Supplemental Motion to exclude the experts' testimony and reports. On June 12, 2014, the Honorable Federico A. Moreno referred all pretrial matters to the undersigned United States Magistrate Judge. ECF No. 346; see also 28 U.S.C.A. § 636(b); S.D. Fla. L.R., Mag. R. 1. On November 25, 2014, a Daubert[1] hearing was held on the instant motions. ECF No. 449. After careful review of the parties' motions, the responses and replies thereto, the parties' oral arguments and evidence presented at the hearing, the entire case file, the applicable law, and being otherwise fully advised in the premises, it is hereby

[1] Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993).

ORDERED and ADJUDGED that Defendants' Motion, ECF No. 406, is DENIED IN PART and GRANTED IN PART; Plaintiff's Renewed Motion to Exclude, ECF No. 407, is GRANTED; and Plaintiff's Renewed Supplemental Motion, ECF No. 409, is DENIED IN PART, GRANTED IN PART, and DEFERRED RULING IN PART, for the reasons expressed at the hearing and as more fully set forth herein.

## BACKGROUND

Over three years ago, on August 9, 2011, this case was removed from state court by Defendants CardSmart Technologies Inc. and David Fisher based on Defendants' assertion of diversity jurisdiction. ECF No. 1. Plaintiff Xtec Inc.'s Complaint states three causes of action against Defendants: (1) violation of the Florida Uniform Trade Secrets Act, §§ 688.001–.009, Fla. Stat. (the "FUTSA"); (2) violation of the Florida Deceptive and Unfair Trade Practices Act, §§ 501.201–.213, Fla. Stat. (the "FDUTPA"); and (3) breach of an implied-in-fact contract. ECF No. 1 Attach. 2.

Plaintiff's case is centered on Defendants' allegedly unauthorized use of Plaintiff's AuthentX source code that was included in the Enabler 1.0 system created for the United States Navy. Defendants allegedly used the AuthentX core in their construction of the Enabler 3.0 system for the Navy. As such, Plaintiff intends on offering the expert testimony of Dan Eiras, who performed a side-by-side comparison of the Enabler 1.0 source code with the Enabler 3.0 source code. It is Mr. Eiras's opinion that Enabler 3.0 was copied from Enabler 1.0 based on his review of four specific exemplars of the coding. See ECF No. 210 Attach. 19 (Sealed Expert Report of Kevin Kennedy Associates).

Defendants intend on rebutting Mr. Eiras's opinion with their own experts, Mr. Jorgensen and Mr. Waldhalm. Mr. Jorgensen's opinion encompasses an attack on the forensic validity of the code that Mr. Eiras analyzed. Mr. Waldhalm's opinion encompasses an attack on the incomplete methods Mr. Eiras used in his source-code comparison, including his failure to consider other likely reasons for code similarities. Mr. Jorgensen and Mr. Waldhalm's opinions are set forth in joint reports from the Sylint Group. See ECF No. 176 Attach. 2 (Sealed Preliminary Report); ECF No. 197 Attach. 2 (Sealed Supplemental Report).

The instant motions were previously filed in January 2014 and were fully briefed prior to the parties' stipulation that denial without prejudice to refile would be beneficial because (1) the issuance of subsequent orders that denied summary judgment and granted a preliminary injunction would require reconsideration of the motions; and (2) the six-month postponement of their trial created an opportunity for further mediation. See ECF No. 360. Accordingly, this Court denied the motions without prejudice to refile. See ECF No. 360.

On November 7, 2014, the parties filed their renewed motions to exclude expert testimony. ECF Nos. 406–07, 409. Plaintiff's Renewed Motion attacks the scope of the expert opinions as it relates to impermissible legal conclusions and factual statements. ECF No. 407. Plaintiff's Renewed Supplemental Motion attacks the scope of the experts' opinions as rebuttal opinions because they relate to issues that Plaintiff submits are not of the same subject matter as Mr. Eiras's opinion. ECF No. 409. Defendants' Motion primarily attacks the methodology of Mr. Eiras's analysis. ECF No. 406. On November 25, 2014, a Daubert hearing was held on the motions. ECF No. 449. At the

hearing, the parties each presented their arguments and offered evidence in support of their respective expert's opinion. However, Defendants' expert Mr. Jorgensen was unable to attend the hearing due to a medical emergency, see ECF No. 448, and this Court necessarily deferred ruling on Plaintiff's challenge to Mr. Jorgensen as an expert—which is the subject of Plaintiff's Renewed Supplemental Motion.[2] The challenges to the remaining two expert witnesses, Mr. Eiras and Mr. Waldhalm, were fully entertained.

## ANALYSIS

### I. Standard on Expert Opinion Evidence

Federal Rule of Evidence 702 provides the framework for admitting testimony of expert witnesses. The Rule states as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702; see also Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993) (applying and explaining requirements of Rule 702); City of Tuscaloosa v. Harcos

[2] Mr. Jorgensen's unavailability does not hinder this Court's ability to dispose of Plaintiff's Renewed Motion, ECF No. 407, because that Motion simply requests this Court to enforce an axiomatic principle that expert opinions must be limited to areas that require such an opinion and cannot extend to legal conclusions, interpretation of emails, or comments on other disputed historical facts.

Chems., Inc., 158 F.3d 548, 562 (11th Cir. 1998) (same). Thus, the proponent of expert testimony must show the following:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

City of Tuscaloosa, 158 F.3d at 562. The Eleventh Circuit Court refers to the aforementioned requirements as the "qualifications," "reliability," and "helpfulness" prongs. United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004).

Though some of the prongs may overlap, a court must individually analyze each concept so as not to conflate them. Id. "The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence." Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999); see also Frazier, 387 F.3d at 1260.

Though it is the district court's duty to play gatekeeper, this role does not supplant the adversary system or the role of the jury. Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1341 (11th Cir. 2003). "Quite the contrary, 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" Id. (quoting Daubert, 509 U.S. at 596).

*A. Qualifications*

Determining whether a witness is qualified to testify as an expert "requires the trial court to examine the credentials of the proposed expert in light of the subject matter of the proposed testimony. The question of whether a proposed witness is competent

to testify as an expert is a matter left largely to the discretion of the court." Jack v. Glaxo Wellcome, Inc., 239 F. Supp. 2d 1308, 1314 (N.D. Ga. 2002) (citing Berdeaux v. Gamble Alden Life Ins. Co., 528 F.2d 987, 990 (5th Cir. 1976)).[3] "This inquiry is not stringent, and so long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility." Clena Invs., Inc. v. XL Specialty Ins. Co., 280 F.R.D. 653, 661 (S.D. Fla. 2012) (quoting Vision I Homeowners Ass'n v. Aspen Specialty Ins. Co., 674 F. Supp. 2d 1321, 1325 (S.D. Fla. 2009)) (internal quotation marks and alterations omitted).

*B. Reliability*

When determining the reliability of a particular scientific or technical expert opinion, a court should consider, "to the extent possible: (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." Quiet Tech. DC-8, Inc., 326 F.3d at 1341 (citing McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1256 (11th Cir. 2002)). "[T]hese factors do not exhaust the universe of considerations that may bear on the reliability of a given expert opinion, and a federal court should consider any additional factors that may advance its Rule 702 analysis." Id. (citing Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999)). Nevertheless, a proponent's burden is not met by "[p]resenting a summary of a proffered expert's testimony in the form of conclusory statements devoid of factual or

[3] See Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) ("We hold that the decisions of the United States Court of Appeals for the Fifth Circuit . . . , as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the circuit.").

analytical support." Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., 402 F.3d 1092, 1113 (11th Cir. 2005). Furthermore, "an expert's failure to explain the basis for an important inference mandates exclusion of his or her opinion." Hudgens v. Bell Helicopters/Textron, 328 F.3d 1329, 1344 (11th Cir. 2003) (citing Rider v. Sandoz Pharm. Corp., 295 F.3d 1194, 1202 (11th Cir. 2002)).

*C. Helpfulness*

Expert testimony is helpful to the trier of fact "if it concerns matters that are beyond the understanding of the average lay person." Frazier, 387 F.3d at 1262 (citing United States v. Rouco, 765 F.2d 983, 995 (11th Cir. 1985)). "Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." Id. at 1262–63 (citing 4 Weinstein's Federal Evidence § 702.03[2][a]).

*D. Rule 403 Requirement*

Notwithstanding a finding that expert testimony meets the admissibility requirements of Daubert and its progeny, sometimes expert opinions may still be excluded by applying Rule 403—which requires that the probative value of the otherwise admissible evidence is not substantially outweighed by its potential to confuse or mislead the jury and is not cumulative or needlessly time consuming. Fed. R. Evid. 403; Frazier, 387 F.3d at 1263. "Simply put, expert testimony may be assigned talismanic significance in the eyes of lay jurors, and, therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse." Frazier, 387 F.3d at 1263.

**II. Defendants' Motion to Exclude Expert Opinion of Dan Eiras**

*A. Qualifications*

Defendants' Motion attacks the qualifications of Dan Eiras only to the extent that he is not qualified to conduct forensic analysis, which Defendants propose is a necessary underpinning for Mr. Eiras's code comparison. ECF No. 406 at 4. Defendants do not otherwise attack his qualifications as a source-code analyst. Defendants' *Reply*, however, attempts to expand the qualifications attack to include an attack on Eiras's ability to read the code at issue. ECF No. 438 at 3–4. This Court will not entertain arguments not initially raised in the Motion. S.D. Fla. L.R. 7.1(c).

To the extent that Defendants argue that Mr. Eiras is not qualified to render an opinion on source code comparison without being an expert in forensic analysis, Defendants' argument fails. Mr. Eiras is not being proffered to testify to whether a particular source code came from a specific server on a specific date. He is simply being offered to testify to whether source codes that were provided to him—by the parties pursuant to an agreed procedure—are similar enough to indicate one code was copied from the other code. Defendants' use of their proffered expert, Mr. Jorgensen, to rebut Mr. Eiras's opinion based on a lack of forensic reliability may be entertained, but it is not before this Court at this time due to Mr. Jorgensen's unavailability.

Notwithstanding this Court's finding that Defendants have otherwise conceded the qualifications of Mr. Eiras to testify in the technical area of source-code analysis, this Court finds that Mr. Eiras is qualified as an expert in the technical field of computer source code, which includes his qualification to provide an expert opinion on source-

code comparison, based on his testimony received at the hearing held on November 25, 2014, as well as on other record evidence.

*B. Reliability*

Defendants' Motion primarily attacks the reliability of Dan Eiras's report, including his methodology. Defendants first argue that Mr. Eiras's testimony should be limited to the "four areas that are noted in the report that identify the alleged similar source code," and should not extend to the nature of AuthentX. ECF No. 406. Defendants essentially argue that Mr. Eiras cannot testify regarding the AuthentX core because there is no record evidence of what AuthentX is. Of course, if there were no evidence of AuthentX and its existence, there is no case. This Court has already determined at the summary-judgment stage that sufficient evidence exists for the trier of fact to determine the proprietary nature of AuthentX; likewise, Mr. Eiras can rely on the same information as a basis for his opinion.

Next, similar to Defendants' argument on qualifications, Defendants maintain that Mr. Eiras's methodology is unreliable because he did not forensically validate the codes that he was asked to compare pursuant to the parties' agreed procedures. Mr. Eiras admits that his opinion does not extend to the forensic validity of the codes he was provided. His opinion is limited to a side-by-side comparison of the provided source codes: one that Plaintiff provided as relevant source code, and one that Defendants provided as relevant source code. Mr. Eiras cannot, and will not be asked to, opine on the validity of the code that he analyzed. However, he will be able to offer his opinion that the codes given to him, taken for what they were represented to be, are similar or identical in part to the point that one code was copied from the other. Any attacks on

the forensic validity of the codes can be advanced by Defendants to impeach the value of the opinion. See Primrose Operating Co. v. Nat'l Am. Ins. Co., 382 F.3d 546, 562 (11th Cir. 2004) ("[A]s a general rule, questions relating to the bases and sources of an expert's opinion affect the *weight* to be assigned that opinion rather than its *admissibility* and should be left for the jury's consideration." (internal quotation marks omitted)).

Defendants also attack the methodology of Mr. Eiras by stating that all he did was conduct "a haphazard side-by-side comparison" of the two codes. ECF No. 406. This Court heard testimony from Mr. Eiras regarding his method of comparing the two codes, as well as his reasoning for limiting his analysis to four exemplars. There was nothing "haphazard" in his approach. Mr. Eiras was directed to points of concern by Plaintiff, and reviewed as much code as he believed to be necessary, in the time that he had the codes available to him, to conclude that the provided Enabler 3.0 code was copied from the provided Enabler 1.0 code—including the AuthentX core. Any challenge to the truncated review can be raised during cross examination of Mr. Eiras. Accordingly, this Court finds that the method used by Mr. Eiras in the analysis underlying his opinion is reliable.

*C. Helpfulness*

Though the parties agree that source code analysis is a technical field in which the trier of fact will be helped by an expert opinion, Defendants seem to argue that a simple side-by-side comparison of human-readable code is not complicated and can be accomplished by a lay person. Defendants' position oversimplifies the analysis and is unconvincing. Though the code is "human readable," it is not independently comprehensible by a lay person. A jury could, perhaps, visually recognize similarities in

the readable code, but they would not be able to understand the importance of the similarities without the technical knowledge of source-code matters. The proposed code similarities are opined to have importance based on their functionality and their uniqueness. Accordingly, this Court finds that Mr. Eiras's technical opinion is helpful to the trier of fact.

*D. Scope*

Defendants argue that Mr. Eiras's report contains inappropriate opinions regarding the "meaning, intent, or purpose" of emails. Ironically, Plaintiff complains of the same issue in Defendants' experts' reports. Clearly no expert is permitted to testify to the meaning, intent, or purpose of emails unless the testimony in some way explains technical matters referenced in the emails. See Fed. R. Evid. 702 (permitting expert opinions only when "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"). Accordingly, though Mr. Eiras was permitted to review all of the emails prior to his analysis in order to gain context, he is not permitted to interpret the emails for the trier of fact as part of his expert opinion. All parties agreed to this obvious limitation at the hearing.

*E. Section II Conclusion*

In sum, this Court finds that Mr. Eiras is qualified as an expert in the field of computer science and source-code analysis. Mr. Eiras's methodology for his source-code comparison is sufficiently reliable and would be helpful to the average lay person. Mr. Eiras is not qualified to make legal conclusions or to interpret the meaning of emails that do not require his expert opinion for interpretation. Nor is he qualified to make

conclusions of disputed historical facts. This Court has otherwise weighed the probative value of Mr. Eiras's opinion against any potential of misleading or confusing the jury and finds that the opinion fulfils the requirements of Rule 403.

**III. Plaintiff's Motions to Exclude Expert Opinion of Don Waldhalm**

*A. Qualifications*

Defendants are offering Mr. Waldhalm as an expert in computer science, computer programing, and software development. Plaintiff does not seem to challenge Mr. Waldhalm's qualifications as a source-code reader, but expended significant time at the hearing arguing that Mr. Waldhalm is not qualified as a digital forensics expert. It is apparent from Defendants' argument at the hearing that they have no intentions of offering Mr. Waldhalm in such capacity. Mr. Jorgensen's expertise is the baseline for Defendants' argument related to the forensic analysis of the provided source codes, including metadata. The confusion stems from the joint report that includes both experts' overlapping opinions in their relevant fields. For the sake of clarity, this Court finds that the evidence received at the hearing, including the testimony of Mr. Waldhalm, as well as the evidence already in the record, is sufficient to find Mr. Waldhalm qualified in the field of computer science, computer programing, and software development. Mr. Waldhalm may testify only to those matters in the reports that address the source-code comparison. However, Mr. Waldhalm has not been qualified to opine on issues of digital forensics.

*B. Reliability*

Plaintiff's only attack on reliability is directed towards the forensic-analysis portion of the rebuttal reports. Plaintiff argues that "Messrs. Waldhalm and Jorgensen testified

that they neglected to verify the 'forensic validity' of the Enabler 3.0 code presented to them by Defendants and used as a baseline with which to compare Plaintiff's Source Code." ECF No. 409 at 16. Thus, Plaintiff posits, "any conclusions drawn by Messrs. Waldhalm and Jorgensen based upon an opinion that Plaintiff's Source Code has not been authenticated or validated is inherently unreliable because the Enabler 3.0 code they reviewed suffers from the identical evidentiary 'deficiencies.'" ECF No. 409 at 16. Basically, it is Plaintiff's position that Defendants cannot argue the forensic validity of the Enabler 1.0 code provided to Mr. Eiras because Defendants did not validate their own Enabler 3.0 code provided to their experts. This argument does not pertain to Mr. Waldhalm because his testimony is limited by his qualifications, and Mr. Jorgensen is the only expert that has been offered in the field of digital forensics. While this Court heard sufficient testimony from Mr. Waldhalm regarding the reliability of his own methodology, Mr. Jorgensen was unavailable for the hearing and may not be able to testify at trial. Thus, this Court must defer ruling on the challenge to Mr. Jorgensen's opinion.

*C. Helpfulness*

Defendants' reports and opinions are offered only as rebuttal reports and opinions; thus, they touch on the same subject matter as Plaintiff's own expert report. Notwithstanding Plaintiff's position that the reports go beyond the scope of a rebuttal, Plaintiff's motions do not attack the helpfulness of the expert reports based on their subject matter.

*D. Scope*

Plaintiff's Renewed Motion attacks the improper legal and factual conclusions that invade this Court's province as the arbiter of the law and the jury's province as the factfinder. ECF No. 407. As previously stated *supra* section II.D., Defendants acknowledged at the hearing that they cannot offer Mr. Waldhalm or Mr. Jorgensen's opinions on matters of legal interpretation, disputed historical facts, or interpretation of emails. The experts will only be permitted to opine on issues relating to their defined expertise.

Plaintiff's Renewed Supplemental Motion argues that Defendants' expert reports are outside the scope of a rebuttal report because they attack the forensic reliability of the code examined by Plaintiff instead of simply doing the same side-by-side code analysis. However, this issue pertains to John Jorgensen's portion of the reports that is specifically directed to forensic verification. Though this Court is inclined to find that the forensic validity of the code provided to Plaintiff's expert is within the scope of a rebuttal report, the unavailability of Mr. Jorgensen at the Daubert hearing requires this Court to reserve ruling on the issue until Mr. Jorgensen is available to be offered as an expert in the field of digital forensics.

*E. Section III Conclusion*

In sum, this Court finds that Mr. Waldhalm is qualified as an expert in the field of computer science, computer programing, and software development. Mr. Waldhalm's methodology for rebutting Mr. Eiras's analysis is sufficiently reliable and would be helpful to the average lay person. Neither of Defendants' experts are qualified to make legal conclusions or to interpret the meaning of emails that do not require an expert

opinion for interpretation. Nor are they qualified to make conclusions of disputed historical facts. This Court has otherwise weighed the probative value of Mr. Waldhalm's opinion against any potential of misleading or confusing the jury and finds that the opinion fulfils the requirements of Rule 403.

CONCLUSION

Consistent with the foregoing analysis and the reasons expressed at the hearing:

(1) Defendants' Motion to Strike the Expert Report of Kevin Kennedy Associates (authored by Jan Eiras) and to Bar Plaintiff's Expert Testimony at Trial, ECF No. 406, is GRANTED IN PART and DENIED IN PART;

(2) Plaintiff's Renewed Motion to exclude the testimony and reports of Defendants' experts, ECF No. 407, is GRANTED;

(3) Plaintiff's Renewed Supplemental Motion to exclude Defendants' experts' testimony and reports, ECF No. 409, is GRANTED IN PART and DENIED IN PART, as to the opinion of Don Waldhalm; and DEFERRED RULING IN PART as to the opinion of John Jorgensen.

DONE and ORDERED at Fort Lauderdale, Florida this 4th day of December 2014.

PATRICK M. HUNT
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Honorable Federico A. Moreno

All Counsel of Record