UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

XTEC, Incorporated, a Florida corporation,

CASE NO. 11-CV-22866-FAM

    Plaintiff,

vs.

CARDSMART TECHNOLOGIES, Incorporated,
a New Jersey corporation and DAVID FISHER, an
Individual

    Defendants.

_____/

## STIPULATED FINAL JUDGMENT GRANTING PERMANENT INJUNCTIVE RELIEF

This cause having come before this court upon the stipulation of Plaintiff, XTEC, INCORPORATED ("XTec") and CARDSMART TECHNOLOGIES, Incorporated ("CardSmart") and DAVID FISHER ("Fisher") and the parties having advised the court that they stipulate to the findings and relief granted herein and this Court being duly advised in the premises, the Court finds orders follows:

Having reviewed the Settlement Agreement executed by the Parties, this Court's prior orders and otherwise being duly advised in the premises it is hereby ORDERED and ADJUDGED:

1.    CardSmart and Fisher (collectively "Defendants"), and their successors and assigns, directly or indirectly together with all others acting in concert with them, are hereby:

Permanently enjoined from utilizing, disclosing, commercially exploiting or deriving revenue from, in any manner whatsoever, any of XTec's trade secrets. For purposes of this judgment, the term "XTec's Trade Secrets" shall carry the same meaning and extent as is set forth in Florida Statutes §688.002(4) and thus includes, without limitation the Navy's Enabler

{W0288459.1}

Systems[1], XTec's AuthentX™ identity and credential management system, know how, physical and logical access control systems, business strategies, industry contacts, internal operating procedures and methods, source code, technical infrastructure, confidential databases and tables (including the location thereof and the interrelationship between them, and their communication protocols), and/or any other information proprietary to XTec and not readily ascertainable by proper means. For purposes of this judgment, XTec's Trade Secrets shall only be those that existed up to the Effective Date. Any trade secrets of XTec that arise in the future (i.e., after the Effective Date) do not apply to this judgment and all parties to this judgment expressly reserve their right, claims and defenses with respect to any future trade secrets of XTec. The prohibition contemplated by this paragraph specifically: (a) includes, without limitation, reverse engineering XTec's Trade Secrets and/or developing derivative works based thereupon and (b) exclude XTec's Trade Secrets that (1) falls into the public domain through no act or conduct by CardSmart or Fisher, and (2) is specifically designated by XTec as not being a trade secret. The source code that XTEC produced during the Litigation, which the Sylint Group forensically bagged and preserved, shall be placed in escrow by David Lichter, Esq. In the event Mr. Lichter is unable or unwilling to act as escrow agent, now or in the future, the Parties shall mutually agree to an alternative escrow agent, provided only that said alternative escrow agent shall be a licensed member of the Florida Bar.

In addition thereto:

---

[1] Consistent with Defendants' denial of liability, Defendants deny the Navy's Enabler 3.0 contains XTec's trade secrets.

a.     CardSmart and Fisher are enjoined for a period of three (3)  years, commencing on January 2, 2015 from working with, for, and/or on behalf of any branch of the United States Government, including the United States Department of the Navy or any other branch of the United States Armed Forces and Department of Defense, whether as a contractor, subcontractor, independent contractor, joint venturer, employee, agent, or otherwise on any contract or project for identity management and authorizations, which includes but is not limited to the Navy's Enabler 1.0, Enabler 3.0, Joint Gatekeeper System (JGS), Identity Management Middleware (IMM) and any successor version(s) of the foregoing enterprise identity management and authorization  software.  The subject matter of this paragraph shall not apply to: (1) any work that CardSmart and/or Fisher were performing prior to 2003; and (2) general computer software development work that CardSmart and/or Fisher may perform which is not prohibited by the terms of the injunction. For purposes of this Agreement, the term "Enabler 1.0" shall have the same meaning as defined by the Enabler 1.0 Design Document dated March 9, 2005 together with any revisions, upgrades and modifications thereto, the term "Enabler 3.0" shall have the same meaning as defined by the Enabler 3.0 Design Document dated September 26, 2011 together with any revisions, upgrades and modifications thereto, and the "JGS" shall have the same meaning as defined by the SEIWG-JGS Standard document dated 2009 together with any revisions, upgrades and modifications thereto.

b.     CardSmart and Fisher are enjoined for a period of five (5)  years, commencing on January 2, 2015, from working with, for, and/or on behalf of: (1) Larry Hembree, Hembree Consulting Services, Inc., and/or any other entity formed by or on behalf of Larry Hembree or with which he is associated in any manner, (2) General Dynamics or any other contractor working with the United States Navy on the Enabler enterprise system and/or any upgrades,

revisions and modifications thereto, and (3) with any other entity, in the development, delivery, installation, maintenance and deployment for the Navy's Enabler 1.0, 3.0, Joint Gatekeeper System (JGS), Identity Management Middleware (IMM) and upgrades, revisions and modifications thereto or any successor version(s) of said enterprise identity management and permissions authorization software and access control and provisioning for access control, whether as a contractor, subcontractor, independent contractor, joint venturer, employee, agent, or otherwise. The subject matter of this paragraph shall not apply to: (1) any work that CardSmart and/or Fisher were performing prior to 2003; and (2) general computer software development work that CardSmart and/or Fisher may perform which is not prohibited by the terms of the injunction.

       c.    CardSmart and Fisher are enjoined for a period of three (3) years commencing January 2, 2015 from performing any work whatsoever in connection with any contract or project for the delivery of a product or service that issues or manages federally trusted credentials for private entities for physical and logical access control. The subject matter of this paragraph shall not apply to: (1) any work that CardSmart and/or Fisher were performing prior to 2003; and (2) general computer software development work that CardSmart and/or Fisher may perform which is not prohibited by the terms of the injunction.

       2.    Defendants must immediately cease and desist from using any and all AuthentX material. Defendants shall return to XTec or destroy all material bearing the trade name AuthentX within forty five (45) day of the docketing of this judgment including development material, emails, marketing material, literature, and any other writings that were delivered by XTec to CardSmart in their possession that bear the name AuthentX, other than a general public reference to the same.

3.      Notwithstanding that this injunction takes effect upon the execution of this Judgment, the Parties to this Judgment agree that CardSmart and David Fisher shall be allowed to maintain and troubleshoot the Navy's Enabler 3.0 enterprise system for the Navy for a period not to exceed ninety (90) days subsequent to January 2, 2015.

4.      In accordance with the terms of the Parties Settlement Agreement, Defendants are required to pay to XTec an agreed upon monetary sum as and for stipulated damages for the claims made by XTec in these proceedings. This Court specifically reserves jurisdiction to enter a Supplemental Final Judgment Awarding Damages in the event Defendants fail to comply with the monetary terms of the Settlement Agreement in the manner set forth therein.

5.      The Settlement Agreement dated the 28th day of December, 2014, executed by the Parties is hereby ratified by this Court and the Parties are ordered to comply with the provisions thereof as this Court's order. Notwithstanding, because the Parties desire to keep certain terms confidential said Settlement Agreement shall not be filed with the Court unless it becomes necessary to enforce the terms thereof.

6.      This Court reserves jurisdiction to enforce the injunctive relief granted herein, to enforce the Settlement Agreement dated the 28th day of December, 2014, including the award of attorney's fees and costs if enforcement becomes necessary.

Done and Ordered this _29th_ day of December, 2014.

Honorable Federico Moreno, Chief Judge
United States District Judge